5343. ARMSTRONG *et al. v.* EQUITABLE LIFE ASSURANCE SOCIETY.

ROAN, J. A policy of life insurance provided that in case of non-payment of premiums the policy might be surrendered, and in lieu thereof a paid-up policy of a certain character would be issued. There was no provision that after non-payment of any premium the policy would have a cash-surrender value. After non-payment of a premium when due, and after some correspondence with reference to surrender of the policy for a paid-up policy, the assignee of the policy wrote a letter inquiring whether the policy had a "cash surrender value;" to which an agent of the company replied in a letter as follows: "I am in receipt of your letter of the 6th inst., in further reference to policy # 943453—Daly. Upon referring to the policy you will find that the present cash value of same is $612. I enclose herewith the necessary voucher to be signed by all parties interested and which is to be sent to me, together with the policy and all assignments and reassignments, and the matter will be given attention." Later the assignee of the policy offered to surrender the policy and demanded payment of the "cash value." The insurance company denied liability on the policy and refused to pay a cash value. Thereupon the present action was brought to recover the alleged cash-surrender value of the policy. The petition alleged that the writer of the above-quoted letter was "duly authorized" by the defendant company to write the letter "making said cash offer, as will more fully appear from said letter." The policy provided that the contract could not be varied except in writing and by one of certain named officers of the company. It was not alleged that the writer of the letter was one of these officers. *Held:*

1. There being no provision in the policy for the payment of any sum of money after the policy had become lapsed by non-payment of premiums, no cause of action upon the policy was set forth in the petition.

2. The alleged contract to pay cash, being a separate and independent undertaking, not provided for by the policy, can not be the basis of a cause of action, unless it contains the essential elements of a contract. The letter relied upon is not a contract, and does not contain any promise to pay any sum of money, but amounts merely to a statement that if certain conditions will be complied with, the request for the payment of a sum of money "will be given attention." Even if the letter had contained a distinct promise to pay, there was no consideration for the promise; and for this reason it can not be enforced. At the time the letter was written the right to have a paid-up policy issued had expired, the policy had absolutely lapsed, and the promise of the defendant's agent to pay the plaintiffs a sum of money was a mere nudum pactum.

3. Under the rulings above made, the petition set forth no cause of action even if the allegation in reference to the authority of the agent to write the letter sufficiently shows that the company itself directed that the letter be written.      *Judgment affirmed.*

DECIDED JANUARY 27, 1914.

Complaint; from city court of Richmond county—Judge William F. Eve. October 8, 1913.

23

The action was by James P. Armstrong and others, to whom had been assigned a policy of insurance on the life of James Daly, which the defendant, the Equitable Life Assurance Society, had issued. The petition was dismissed on general demurrer. From the petition it appears, that the premiums on the policy were due annually in advance, and were paid until October 23, 1906, and that the premium due on that day was not paid. On the preceding day Armstrong, in behalf of himself and of the other assignees, wrote to the defendant's cashier at Atlanta, Georgia, a letter saying, in regard to the policy: "As a premium is due to-morrow, I would ask that you arrange to have paid-up policy issued for this, as the assignees do not care to continue premiums on this policy. The paid-up policy with paid-up additions will amount close on to $1,150." The letter was received on October 23, 1906, and on October 30 the defendant's cashier at Atlanta wrote in reply: "Upon receipt of the old policy at this office, together with the original assignment, the matter of issuing a paid-up policy will have attention." On April 6, 1907, Armstrong, in behalf of himself and of the other assignees of the policy, wrote to managers of the defendant as follows: "Relative to surrendering policy number 943453, about which we had some correspondence from you on October 13th and 30th respectively, I would like to ask if this policy has a cash-surrender value, and, if so, how much. Kindly advise me at your earliest convenience, as I would like to close this matter up in some manner at once." The petition alleges that on April 8, 1907, the defendant company, "through its cashier, M. J. F. Bowman, replied to said letter, as follows." The contents of this letter are set out in the foregoing decision. It is alleged that Bowman "was duly authorized by defendant company to write said letter of April 8, 1907, making said cash offer, as will more fully appear from said letter." On April 27, 1907, the said Bowman, cashier of the defendant, addressed a letter to Armstrong as follows: "I am in receipt of your letter of the 24th in further reference to policy number 954453 [?]. I note what you say regarding the unused dividends, and I enclose a new voucher with the amount, viz. $73.04, included. Upon receipt of this voucher, properly signed, the matter will be given attention." On May 29, 1907, Armstrong wrote to Bowman that the assignment of the policy would be forwarded later, as one of the assignees was out

in the country. "On April 1, 1910, defendant company denied any liability on said policy and refused to pay petitioners the surrender value of said policy. . . Petitioners have repeatedly demanded of defendant company the cash value of said policy and the accrued dividends thereon, but defendant company has wholly refused to pay the same. . . Petitioners have repeatedly offered and now offer to surrender said policy and accept the cash-surrender value thereof and the accrued dividends thereon, in lieu of said policy. Wherefore petitioners pray that judgment against defendant company for the surrender-value of said policy be awarded petitioners, including the accrued premiums thereon."

The policy contains the following provisions:

"The policy shall lapse and, together with all premiums paid thereon, shall forfeit to the Society, on the non-payment of any premium due; excepting that upon due surrender of this policy, within six months after said lapse, providing premiums have been duly paid for at least three full years of assurance, the Society will issue a non-participating paid-up policy for the entire amount which the reserve on this policy will then purchase as a single premium, calculated by the regular table for single premium policies, now published and in use by this Society. In consideration of the premises it is understood and agreed that all right or claim for temporary assurance or any other surrender value than that provided in this contract is hereby waived and relinquished, whether required by the statute of any State or not."

"This policy, during its continuance, shall be entitled to participate in the distribution of the surplus of this Society, by way of increase to the amount assured, according to such principles and methods as may from time to time be adopted by this Society for such distribution; which principles and methods are hereby ratified and accepted by and for every person who shall have or claim any interest under this contract; but the Society may at any time before a forfeiture, upon the request of the person holding the absolute legal title to this policy, substitute a cash payment to be fixed by said Society in lieu of the said increase to the amount assured, to be used in reduction of subsequent premiums."

"This policy and the application therefor, taken together, constitute the entire contract, which can not be varied except in writing by one of the following executive officers of the Society, at its

home office in New York, viz.: the President, one of the Vice-Presidents, the Secretary, Assistant Secretary, one of the Actuaries, the Comptroller, the Treasurer, the Auditor, or the Registrar."

*Isaac S. Peebles Jr.,* for plaintiffs.

*Joseph B. & Bryan Cumming,* for defendant.